**BERNSTEIN–LANFORD, Inc., v. TIEDEL.***

**No. 4350.**

Court of Appeal of Louisiana. Second Circuit.

Nov. 10, 1932.

---

*Rehearing denied December 16, 1932.

Irion & Switzer and Chas. B. Emery, all of Shreveport, for appellant.

John B. Files, of Shreveport, for appellee.

PALMER, J.

Plaintiff sues to recover of defendant the sum of $774, with interest and attorney's fees, covering the purchase price of an ·automobile, less certain credits aggregating $116.50; and, in connection with the demand, alleges a vendor's lien ·and chattel mortgage on the automobile in question, and seeks to have its lien and privilege recognized and enforced.

Plaintiff avers that it is the holder and owner in due course for value before maturity and without notice of thirteen chattel mortgage ·notes executed by the defendant, H. J. Tieuel, to the order of bearer, aggregating a total of $774, which notes bear 8 per cent. per annum interest after maturity, and 15 per cent. additional upon the principal and interest as attorney's fees.

Plaintiff further alleges that, in order to secure the payment of said notes, etc., the defendant, by notarial act, stipulated a vendor's lien and chattel mortgage in favor of the holder of ·the said notes, upon one ·certain Oakland sedan, and that the notes sued on are paraphed "ne varietur" to identify them with the said act of chattel mortgage; that the said notes and the act of chattel mortgage provide that, if any one note is not paid at maturity, all installments shall mature, and all notes become due and payable at the option of the holder; and that several of said notes were not paid at maturity, and consequently the entire obligation is now due and exigible.

It prays for judgment in the amount sued for, with interest and costs, and for 15 per cent. additional upon the principal and interest as attorney's fees, in accordance with the provisions of said act'of chattel mortgage, and for a recognition of its vendor's lien and special privilege on the automobile in question. Plaintiff prays that the property be seized and sold, according to law, and that it be paid the full amount of its claim by preference and priority.

Defendant's answer may be summarized as follows: That while he purchased the automobile in question, gave the notes sued on, and executed the chattel mortgage referred to, he denies any liability thereon because plaintiff demanded of him that the said automobile be returned and delivered to it, and that, under said demand, he returned and delivered to plaintiff the said automobile, which is still in its use and possession; and that, by reason of the fact that the plaintiff thus took' physical possession of the said automobile and deprived him of the use thereof, it thereby 'breached and "nulled" the said contract of purchase, and thus relieved defendant of any liability on the purchase price of said automobile, and, consequently, of any liability on the notes and chattel mortgage sued on.

By way of reconvention, defendant asked for judgment against plaintiff in the sum of $116.50, with legal interest from dates of payment, representing the amount he paid on the automobile up to the time he alleges defendant took possession of it.

The district court rejected the demands of plaintiff, at its cost, and also rejected the reconventional demand of defendant, at his cost. From that judgment plaintiff has appealed, and defendant has answered the appeal, asking that the judgment of the district court be amended by awarding him judgment against plaintiff in the sum of $116.50, the amount he paid on the purchase price of the automobile.

Opinion.

It appears that on April 27, 1931, defendant purchased of plaintiff an Oakland sedan for the price of $774, and evidenced that indebtedness by executing thirteen promissory notes, one being for $150, and each of the other twelve being for $52, or a total of $774, and at the same time secured the payment of said notes by notarial act, passed before Richard H. Switzer, in which a vendor's lien and chattel mortgage was stipulated on said automobile in favor of the holder of the said notes to secure their payment. The first of the notes—the one for $150—matured April 15, 1931, and thereafter one of the $52 notes matured on the 3d day of each succeeding month, making the last of said notes mature May 3, 1931. Each note bears interest at the rate of 8 per cent. per annum after maturity and stipulates 15 per cent. attorney's fees.

It is not disputed that none of the notes were paid at maturity. The notes and the chattel mortgage specify that failure to pay at maturity shall, at the holder's option, mature all of the notes. There is therefore no question of prematurity in the case, even though the suit was filed January 25, 1932, some time before the stipulated due dates of the last four notes. The only question presented for decision in this case is this, Did plaintiff, by virtue of the manner in which it took possession of the automobile in question, accept the automobile in settlement of its debt against the defendant, and thereby release him of the obligations evidenced by the notes and contract sued on?

Counsel for both parties agree that, if the facts show that plaintiff forcibly repossessed this automobile, without due ·process of law, and against the will and consent of defendant, it would have thereby accepted the automobile in settlement of its said debt, and

would have no right to recover a personal judgment against defendant in this case on the obligation sued on. Counsel also equally agree that, if the facts show that plaintiff did not forcibly repossess the automobile, contrary to the will and consent of the defendant, but, instead, merely took possession of it with the consent of defendant, for storage purposes, awaiting an adjustment of their differences, plaintiff would be entitled to a personal judgment on the obligations sued on and to a recognition of its lien and privilege on the automobile in question, and have the right to sell it and apply the proceeds on said debt. The court is therefore called upon to analyze and construe the testimony bearing upon this question.

■ Obviously, defendant carried the burden of proving his defense to the effect that the automobile was taken from him against his will and consent, and thereby accepted by plaintiff in settlement of the debt sued on. In support of his contention, he testified that Mr. Lanford, an officer in the defendant company, and another man, came to his filling station about three months previous to that time, and demanded of him to drive the automobile out to plaintiff's place of business; that he tried to prevail upon them to let him keep the automobile that afternoon, on his promise that he would bring defendant some money to apply on his indebtedness, but that they refused and demanded that he then take the automobile to the plaintiff's place of business; that he got in the car and drove it to plaintiff's place of business, and was followed by Mr. Lanford and the employee of plaintiff, and that, when he got to their place of business, he was told that he had been riding free on the company long enough; that Mr. Lanford came up and asked him if he had any money to pay on the car, to which he replied that he did not; that thereupon Mr. Lanford instructed him that if he had anything in the automobile to get it out, and offered to send him back down to his place; that he tried to prevail on Mr. Lanford to let him keep the car, but Mr. Lanford refused, saying that he could not help him any further, since the company demanded that he take the car; that, when he started to get his papers out of the car, Mr. Lanford gave him a card to sign, but, after looking at it, he would not sign it, telling Mr. Lanford he was taking the car without due process of law, and that he did not think he should sign anything; and that he did not hear anything more from them until they sued him.

Defendant further testified that in the meantime he had seen the car on the streets several times. He did not deny that he was considerably behind with his payments on the car. Defendant was not certain as to how long he had used the car, but thought it was about a year or maybe more. He said that he did not think it had been two years.

Ruth Williams testified, in effect, that she was at defendant's place of business at the time Mr. Lanford came and demanded the car; said Mr. Lanford told defendant that they wanted the car and for him to get in it and drive ahead; and that they all went to the garage and defendant came back walking.

Durham Collins testified, in effect, that he had seen the car on the street several times; that he knew the car because he had worked for the defendant, during which time he had driven it many times.

Willie Edwards testified, in effect, that he is familiar with the car in question, and on one occasion saw it out at the corner of Pierre avenue and Weinstock street, driven by one of Lanford's employees.

T. B. Lanford testified in behalf of plaintiff, and in rebuttal to defendant's testimony as to the manner in which he recovered the automobile, and said in effect that, on the occasion when he went to the defendant's place of business to see about the car, he told defendant to come to the office of the company, a thing that defendant had been doing for a year; that defendant always had come to the plaintiff's office on all previous occasions in the car; and that he had several times previously voluntarily left the car with plaintiff, with the understanding that it would stay there until he made a payment. He stated that the car had not been used with his authority during the time it was in storage at plaintiff's place of business; that he had at no time attempted to sell the car, but that it had been left there waiting for defendant to come and pay off. He said, in regard to the failure of defendant to sign the storage receipt, that defendant, when presented with it, simply stated he would have to see his lawyer before he would sign it.

Mr. Lanford was asked by the court:

"You know that he was objecting to acquiescing in surrendering the car? A. He said that he had no objection to leaving the car until the first of the month.

"Q. He did not want to leave the car there? A. Yes, sir, he left the car willingly, and the reason that he did that was because he had promised to pay before that and did not make payments for several weeks previous, and he would leave the car there in storage until he got up with his payments.

"Q. I derive the impression from that testimony that he surrendered the car as a result of suggestion to do so, but that he declined to agree to that or to sign a receipt that it was for storage purposes? A. He left it there, until he could catch up with his payments.

"Q. I do not mean that the company entered into any agreement to extend, or accept the car in payment of what was owed? A. We went into possession, he placed the car there

until he could pay off, and if he did not pay off, would sue."

On cross-examination, he stated, in effect, that he did not demand the car placed in storage with plaintiff company, but that it was necessary that the car be placed in storage somewhere until some payments were made; said he told him he could store it at any place, even to leave it in his own garage, provided he did not use it. However, he stated that his expressed willingness for the car to be stored in defendant's own garage was given on previous occasions.

L. S. Kirsch, office manager of plaintiff company, testified in substance as follows:

That he was in the office and saw the defendant on the occasion when he brought the automobile in question to the plaintiff's place of business and heard most of the conversation between defendant and Lanford; that the gist of that conversation was that defendant had fallen considerably behind with his payments, notwithstanding plaintiff had made frequent efforts to collect the amount due, and that defendant was getting more and more behind with his payments, which was detrimental to both defendant and plaintiff, and that Lanford demanded payment, to which demand defendant replied in effect that he could not make any payments until the first of the month, which was about a week or ten days off. He said that Lanford told defendant to leave the car in storage until the first of the month, at which time defendant was claiming he expected to make a payment, and at which time it would be satisfactory for defendant to again begin the use of the car. He stated that defendant had no objection to this plan, but was satisfied with it and left the car. He said that Lanford did not require that the car be stored with the plaintiff company, but was only insisting that defendant store it somewhere until he made some further payments on the past due indebtedness.

As stated before, this is a special defense, and defendant carried the burden of affirmatively establishing it. He swears positively that the automobile was taken from him, contrary to his wishes and against his will and consent, while, on the other hand, Lanford and Kirsch testified that they were merely seeking to have the car taken out of use and put in storage until defendant made further payments, and that defendant consented for that procedure to be followed; that is, they say in effect that they made this suggestion to defendant, as they had done on previous similar occasions, when he readily consented, and that he again consented for the car to be stored until about the first of the following month, which was about a week or ten days off, at which time he would make a further payment.

There is no controversy in this case between plaintiff and defendant that, if the defendant does owe the notes sued on, plaintiff has the right to a personal judgment against him and to have the car seized and sold and the proceeds applied on the debt.

This case is quite similar to the case of Eagle Trading Company, Inc., v. Delta Motors Co., Inc., et al., 157 La. 832, 103 So. 182, 183. That was a case in which plaintiff, who was the purchaser of the trucks in question, sought to have a contract of sale of two automobile trucks declared violated and annulled, to recover the purchase price that he paid and for damages. In that case it appears that the defendant, by notarial act, sold to plaintiff the two automobile trucks involved. A part of the price was paid in cash, and the balance was represented by negotiable promissory notes, secured by a chattel mortgage and liens on the trucks. In due course, the defendant, American Bank & Trust Company, became the owner of the notes. Plaintiff failed to pay the notes, or some of them, at maturity, and the bank, on behalf of itself and the Delta Motors Company, Inc., demanded that the trucks be delivered to the garage of the motors company to prevent deterioration of the trucks, pending a settlement of past due notes or an adjustment of the matter. The trucks were so delivered, and the motors company gave plaintiff a receipt for them. Two months later, plaintiff brought this suit claiming that the act of the bank and the motors company constituted a violation of the original contract of purchase, and claimed that the bank and the motors company were bound unto plaintiff in solido for the amount paid on the purchase price and for damages sustained by plaintiff by virtue of being deprived of the use of the trucks, as well as for attorney's fees incurred in bringing the suit.

Defendants pleaded that the petition did not disclose a cause or right of action. The district court maintained the pleas and dismissed the suit. Plaintiff appealed to the Supreme Court, with the result that the judgment of the lower court was affirmed.

It will be noticed that in that case the purchaser of the trucks, who was plaintiff in that case, was demanding a cancellation of the debt sued on because, on the demand of the motors company, who had originally sold the trucks, he was compelled to deliver the trucks into their possession for storage, pending the adjustment of the amounts he was due on the purchase price. Passing upon that point, the Supreme Court said:

"Instead of exercising their legal right of seizing and selling the trucks, and thereby dispossessing the plaintiff by law, the defendants demanded that the trucks be placed in the garage to prevent them from being deteriorated by use on the streets. The plaintiff consented to this demand, and voluntarily

surrendered possession as requested. Under such circumstances the taking possession by the defendants was in no sense arbitrary or illegal.

"By surrendering possession the plaintiff gained an extension of time and an opportunity of settlement and adjustment of the debt."

Continuing, the court said:

"The defendants obtained, with the consent of plaintiff, no greater right nor advantage than could have been secured by process of law.

"A party with capacity to contract is at liberty to do voluntarily that which he can be compelled to do by law."

■ To bring the case now before the court practically within the doctrine laid down in the Eagle Trading Company-Delta Motors Company Case, supra, it is only necessary to reverse the parties in the title and also for the court to conclude that defendant consented for the automobile in question to be placed in storage until he made a payment a short time later. The undisputed facts show that defendant had on different occasions previously consented to the same procedure that appears to have been followed at this time. It would seem rather remarkable, inasmuch as he appears to have consented to such storage for similar reasons on previous occasions, that he would now be so opposed to it. Certainly, he was behind with his payments and stayed off a foreclosure proceeding by consenting to storing his car. It did him no harm, but, instead, gave him the advantage of a delay in the institution of foreclosure proceedings.

True enough, defendant testified that the car was taken from him against his will and consent, but, on the other hand, Lanford and Kirsch are equally positive that he consented to the storage. In view of the fact that it is not disputed that on other occasions defendant had consented for similar purposes to have the car stored pending some payments, we are led to believe that the testimony of plaintiff's witnesses on this point outweighs that of defendant, especially in view of the fact that the burden rested affirmatively upon defendant.

■ Paraphrasing the language of the court in the Eagle Trading Company-Delta Motors Company Case only to the extent of exchanging the positions of the plaintiff and defendant, we would have the Supreme Court say in the case at bar, "The plaintiffs obtained, with the consent of defendant, no greater right nor advantage than could have been secured by process of law."

The defendant had used this car anywhere from one to two years. He had only paid $116.50, with an old car which was turned in on the purchase price, the value of which is not stated in the testimony. It was not unreasonable at all for plaintiff to want its money or to have the defendant cease using and wearing the car, thereby depreciating it in value, while it awaited the just payments due it. Plaintiff clearly was within its rights to demand of defendant the placing of the car in storage until he could satisfactorily adjust the payments he was due on the purchase price, if they were to delay institution of foreclosure proceedings, and, unless they forcibly dispossessed him, they have not voided the contract.

We are convinced that the evidence shows that the defendant, even though reluctantly, actually consented for the car to be stored while he was given the advantage of further delay in payment of the debt, without foreclosure proceedings.

As stated, the defendant had done similarly on different occasions before, with regard to the same car. This appears to be undisputed, hence, in view of the testimony to the contrary, we cannot accept his testimony that on this particular occasion he was forced to leave it with plaintiff, contrary to his wish and consent.

We regret that we are compelled to disagree with the conclusions of the learned trial judge on his findings of fact, but in this case we must do so. Therefore the judgment of the lower court is reversed, in so far as it rejected the plaintiff's demands, and there is now judgment in favor of plaintiff and against defendant in the sum of $774, with 8 per cent. per annum interest from May 15, 1931, until paid, and an additional 15 per cent. upon said sum, as attorney's fees, together with all costs of this suit, less credits of $42, paid on May 23, 1931; $27 paid on June 6, 1931; $10 paid on June 25, 1931; $10 paid on July 4, 1931; $1 paid on August 6, 1931; $5 paid on October 6, 1931; $7 paid on October 9, 1931; $5 paid on October 13, 1931; and $9.50 paid on November 1, 1931.

It is therefore further ordered, adjudged, and decreed that plaintiff have judgment against defendant recognizing plaintiff's lien, privilege, and chattel mortgage upon the Oakland sedan involved in this case, having motor No. 202,060, serial No. 277,455, mortgaged to secure the notes herein sued on, and that the said automobile be seized and sold according to law, for cash, to the highest bidder, without benefit of appraisement, and that, out of the proceeds of the said sale, plaintiff be paid the full amount of its claim, by preference and priority, over all persons and claims whatsoever, or such part of said indebtedness as the said proceeds will discharge.

It is further ordered, adjudged, and decreed that the defendant pay all costs of both courts.